**Joe L. SMALLWOOD**

v.

**SOUTHDOWN, INC., et al.**

**Civ. A. No. 3–3632–B.**

United States District Court,
N. D. Texas,
Dallas Division.

March 21, 1972.

\* \* \* \* \*

John L. Hauer of Akin, Gump, Strauss, Hauer, & Feld, Dallas, Tex., for plaintiff.

J. Burleson Smith of Cox, Smith, Smith, Hale & Guenther, San Antonio; and Stan McMurry, Dallas, for defendant.

## MEMORANDUM OPINION
## AND JUDGMENT

HUGHES, District Judge.

This case involves the merger of Pearl Brewing Company into Southdown, Inc. on December 30, 1969. Joe L. Smallwood alleged that the named defendants violated federal securities laws and Texas law. Plaintiff sought damages for himself and as a representative of a class of Pearl shareholders, determined by the Court in a pretrial conference. In addition Smallwood sued derivatively on behalf of the old Pearl shareholders for damages resulting for an alleged breach of the merger agreement and violation of federal securities laws. .

Smallwood made the following contentions:

1. The proxy statement of August 12, 1969 sent by Pearl to all stockholders announcing a meeting on September 9, 1969 to vote on the proposed merger of Pearl with Southdown was misleading in that it failed to contain certain material facts.

2. Pearl breached the terms of the merger by consummating the merger with Southdown on terms different from those set out in the proxy statement of August 12, 1969.

3. A letter dated November 18, 1969 to Pearl shareholders from Southdown failed to inform the shareholders of certain material facts in order to make the statements in the letter not misleading.

4. Certain acts or practices of Pearl and Southdown in connection with the merger operated as a fraud or deceit upon the Pearl shareholders.

5. There was a conspiracy between certain of the defendants to cause Pearl to be merged into Southdown on terms different from those set out in the Plan of Merger approved by Pearl shareholders.

The case was tried before a jury. Motions for instructed verdict filed by the parties were overruled and thereafter the case was submitted to the jury on special issues with accompanying instructions. After the jury returned its verdict, the parties filed Motions for Judgment together with briefs.

After consideration of the jury verdict, the evidence, the briefs and other memoranda submitted by the parties, the Court concludes that the Plaintiff should not recover either in his class action or derivatively.

With reference to Plaintiff's contention that the proxy statement was misleading, the jury found against the Plaintiff in that (1) it did not fail to adequately disclose material facts, and (2) other facts omitted were not material.

The merger agreement, included in the proxy statement, contained a provision (paragraph 16(c)) that as a condition to Pearl's obligation to consummate the merger Southdown was to have procured an underwriting commitment in order to allow Pearl shareholders to sell up to 45% of their Southdown Preferred for $45.00. It was further provided that this provision was subject to waiver (Paragraph C) and the jury in Issue 9 found that the Pearl Board had not failed to adequately disclose this provision. This provision for waiver and the finding of the jury that there was not a failure to disclose is a complete bar to recovery by the Plaintiff.

■ There is nothing in the statutory law, the cases, or in any other authority which precludes the Board of Directors from waiving or modifying conditions when the right to waive is an express provision of the merger contract.

In the fall of 1969 it is well known that the stock market was in the worst decline since the early thirties. As a result it became impossible for Southdown to secure an underwriting commitment which would allow Pearl shareholders to sell up to 45% of their Southdown Preferred for $45.00 per share. When this occurred, the Pearl Board at a meeting on December 22, 1969 approved a proposed agreement from Zapata Norness, Inc. to purchase at a price of $45.00 a share the 255,704 shares of Southdown

Preferred which had been tendered in response to a letter of November 17, 1969 from Southdown to Pearl shareholders. The waiver by the Pearl Board of the condition in the merger plan to procure an underwriting commitment was not only expressly provided for but was a decision in which the Board exercised reasonable and prudent business judgment in order to facilitate the merger.

■ Not only was the waiver power lawful because corporate parties are generally free to contract such terms as seem desirable or appropriate, but also because as a matter of state corporate law it is lawful and proper for shareholders to empower their Board to waive specified conditions of a merger agreement. (Art. 5.01 subd. B(6) V.A.T.S.) That power permitted Pearl to exercise its business judgment in the best interest of its shareholders. The exercise of the waiver was in accordance with the terms of the merger agreement and as contemplated by state law.

It is Plaintiff's contention that Issues Nos. 15, 16, and 17 were answered in his favor and entitle him to recovery. These issues deal with the letter of November 18, 1969 to Pearl shareholders from Southdown. The jury found that the failure of this letter to disclose (1) that the December 2, 1969 date for tendering their stock was a change in the original Plan, (2) that the merger could be consummated without an underwriting agreement and without the period of ten days after the merger in which to tender their shares, and (3) that a corporation (Zapata) with a substantial investment in Southdown could be substituted for an underwriter were omissions of material facts necessary in order to make the statements in the letter not misleading.

■ It has already been pointed out that the power to waive the underwriting conditions found in Special Issues Nos. 16 and 17 to have been omitted were set out in the merger agreement, which facts had been found in Issue No. 9 by the jury to have been adequately disclosed. The Plaintiff and the class he represents were aware of the waiver provision. There was no need to reiterate what was in the proxy material, and the omission from the November 18 letter could not have been relied on by them.

■ With reference to Issue No. 15, the date of December 2, 1969 for tender of Pearl stock was determined by the Board at its meeting on November 17, 1969. The underwriting agreement enclosed in the letter outlined the procedure for the purchase of Southdown stock. While this procedure may have changed the period of tender from that which an ordinary Pearl shareholder thought the merger contract granted, this interpretation is questionable. The ten days referred to in the merger agreement is the time in which the underwriters could purchase the Southdown Preferred which the shareholders had received for their Pearl stock. It does not have reference to the time for tendering their Pearl stock. But assuming it is a change from the merger agreement, the date of December 2, 1969 is clearly set out in the letter of November 18 under "Instructions to sell preferred stock" and the shareholders could not have been misled.

■ Even if it could be assumed that the actions of the Pearl Board on November 17 did not constitute a valid waiver of the alleged ten day tender period, there is no causal relation between the change and any damages allegedly sustained by Plaintiff. For change in the tender period to result in damage, it must have induced the Pearl shareholders to withhold tender for the promised $45.00. Plaintiff contends that because the shareholders held their shares and did not tender, they were damaged by receiving stock of a lesser value. The Plaintiff, however, repeatedly contended that the damage resulted from Defendants' failure to secure an underwriting commitment which would have protected the value of the new Southdown Preferred Stock. But as heretofore stated, the underwriting commitment was legally waived and no dam-

age can be recovered because of a legally waived condition. Clearly as Plaintiff argued, it was the possibility of receiving $45.00 which caused the shareholders to hold their stock. The change, if there was one in the ten day period for tender, could not have influenced a shareholder to hold his shares and not tender them by December 2, 1969.

The Plaintiff likewise relies heavily on Issue No. 19 for recovery. In it the jury found that the following acts operated as a fraud or deceit upon the Pearl shareholders: (1) the failure to inform the Pearl shareholders that the date for tender had been changed, (2) failure to inform that the merger could have been consummated without a firm commitment from a group of underwriters, (3) failure to inform that the merger could have been consummated without a tender period following the effective date of the merger, and (4) failure to inform Pearl shareholders that Zapata Norness, Inc. had a substantial interest in Southdown.

All of these matters concerned changes in the merger agreement which the Board could legally waive. There can be no fraud in doing what the Board was legally empowered to do. Additionally, as pointed out with reference to Issues Nos. 15, 16, and 17 there is no causal connection between the omissions and the alleged damages.

With reference to the issues dealing with conspiracy, while the jury found there was a conspiracy between Pearl and Southdown, they likewise found the conspiracy was not a proximate cause of the merger.

For the reasons stated, there has been no violation of federal securities law and there can be no recovery by Plaintiff either derivatively or representing a class. There were no misrepresentations or omissions of facts or deception concerning the changed conditions of the merger. The changes that were made were validly executed. All of the allegedly fraudulent acts were permissible because they came within the ambit of the waiver provision.

In addition to the matters submitted to the jury, the Plaintiff has contended that the November 18, 1969 letter and the enclosed documents constituted a "tender offer or request or invitation for tenders" which Sections 14(d) and (e) of the Exchange Act regulate. Sections 13 and 14 require that certain schedules be filed in connection with tender offers. The purpose of these sections is to provide to the shareholders and the investing public full and adequate disclosure of material facts by both the acquired and the acquiring companies involved in a "takeover bid." 2 U.S. Code Cong. & Admin. News p. 2818 (1968). Among the items which the companies must disclose are the following: (1) the type security and issuer involved; (2) the identity and background of the persons and companies involved; (3) the source and amount of funds or other consideration; (4) the purpose of the transaction; (5) the interest in securities of the issuer; (6) information concerning any contracts, arrangements, or understanding with respect to securities of the issuer; (7) information on the persons retained, employed, or to be compensated to accomplish the transaction. Without considering possible exemptions which may apply to the Defendants under these sections, the Court concludes that the Plaintiff can establish no damage arising from the failure to file the schedules because the Defendants had already disclosed through the proxy statement, underwriting agreement, and the preliminary prospectus all of the pertinent facts which were within their knowledge at the time of the subject transactions.

Furthermore, neither of these sections applies to the transactions in issue. In this case the Defendants accomplished this merger by the proxy method. The companies submitted a merger contract to the shareholders and solicited approval by proxies. The merger agreement provided that there would be a tax-free stock-for-stock exchange and an option for a shareholder to·obtain cash for a portion of this stock with a capital gains

treatment. The legislative history of the Williams Act demonstrates that its purpose was to regulate "takeover bids". Southdown clearly did not seek to acquire control of Pearl through a cash tender offer, hostile or otherwise. The acquisition of Pearl was to be accomplished through a mutually agreed merger contract approved by the stockholders. Sections 14(d) and (e) are not applicable to this form of corporate acquisition.

There being no violation of either federal or State statutory provisions or common law which resulted in any damage to Plaintiff or to the members of the class he represents or to old Pearl Brewing Company, It is therefore ordered, adjudged, and decreed that Joe L. Smallwood, individually and as representative of a class, defined by the Court, take nothing; it is further ordered, adjudged, and decreed that Joe L. Smallwood suing derivatively on behalf of old Pearl take nothing; and

It is further ordered, adjudged and decreed that Defendants go hence with their costs.